WESTERN REALTY COMPANY, Respondent, v. GUY L. MUSSER et al., Appellants.

Kansas City Court of Appeals, December· 1, 1902.

1. **Title: PRINCIPAL AND AGENT: EVIDENCE.** S. purchased a newspaper through her agent, who subsequently leased it and made a chattel mortgage to and rented a room of defendant's intestate. The evidence attending these transactions is reviewed, and it is *held* that the agent acquired no title which was solely in S. and that the defendant's intestate by his acts and correspondence recognized S.'s title.

2. **Chattel Mortgages: FORECLOSURE: RIGHTS OF MORTGAGEE.** A mortgagee in an overdue chattel mortgage may maintain replevin for the mortgaged goods without foreclosure.

3. **Principal and Agent: DEALING WITH GOODS: ESTOPPEL: PLEADING: EVIDENCE.** To estop a principal from claiming title against the vendee of his agent on the ground that he was permitting the agent to treat· the property as his own, it is necessary that the facts be pleaded and proved.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*W. S. Herndon* and *E. J. Smith* for appellants.

(1) In order for the plaintiff in replevin to recover, there must be a right to the possession, coupled with a general or special property. Stone v. McNealy, 59 Mo. App. 396; Baker v. Campbell, 32 Mo. App. 530; Wright v. Richmond, 21 Mo. App. 270; Leet v. Bank, 141 Mo. 584; Weeks v. Etter, 81 Mo. 375. (2) If Green purchased the property from Ross, either for himself or for Miss Shinn, then, any subsequent transfer of the notes, would carry no right to the property or to. its possession. Ball Bros. v. McCray, 45 Mo. App. 373; 5 Am. and Eng. Ency. Law (2 Ed.), page 1021, and note 1.

*Jay L. Carlisle* and *F. B. Ellis* for respondent.

(1)   The mere naked possession of Miss Shinn was sufficient to maintain this suit.   The bare naked possession is sufficient to maintain replevy against one who has no better title to property.   Scott v. Riley, 46 Mo. App. 252; Grocer Co. v. Shackelford, 56 Mo. App. 642; Bank v. Wood, 124 Mo. 78.

ELLISON, J.—This is an action of replevin for a newspaper plant consisting of a printing press and other items of property connected therewith.   The judgment in the trial court was for plaintiff.

The plaintiff and defendant claim under chattel mortgages given on the property.   Plaintiff's claim rests on a prior mortgage given by Burnham and Updyke to Ross.   Defendant's claim rests on a subsequent mortgage given by Green to defendant's intestate.   The facts appear substantially as follows:   Ross owned the paper and sold it to Burnham and Updyke who executed to Ross three notes, one first due for $400 and two others for $500 each, and a chattel mortgage on the property to secure them.   Ross assigned these notes to Gage as collateral for borrowed money.   Burnham and Updyke failed to pay the note first due and Ross, through his agent, Smith, took possession under his mortgage and becoming dissatisfied with Smith he put William Henry in charge.   Henry, as agent for Ross, then sold the property to Green as agent for Miss Shinn. Henry took the purchase money and paid Ross's debt to Gage and received from the latter the Burnham and Updyke notes which he held as collateral for Ross's debt.   Henry then delivered them over to Green who indorsed them to Miss Shinn for whom he had purchased the property.   Green leased the newspaper for a time from Miss Shinn, when he quit and turned the keys to the building over to her and, as stated by witnesses, left the country.   She rented a building from defendant's intestate, Musser, in which the property was kept, and afterwards sold it to this plaintiff.   As tending

to prove the acts of ownership by Green it was shown that he was in possession and published the paper and that he gave a mortgage to Musser, defendant's intestate. That he brought a replevin suit for possession against Smith, and purchased some printing material. It was furthermore offered to show that he published in the paper that he had bought it. This was excluded, but, in considering the case, we will assume that it was admitted.

Many points are presented in support of the appeal, including several objections to the instructions given for plaintiff. But as we regard evidence which prominently appears in the cause and which is uncontradicted as determining the case in plaintiff's favor the judgment could not have been otherwise than it is and we need not enter into a discussion of such points.

Ross is the source of the title through which each of the parties to the controversy claim. Neither side disputes his title. Plaintiff claims that Miss Shinn bought of Ross through her agent Green; and that she then sold to plaintiff, and that is what we have just stated the facts to be. But defendant claims that Green bought of Ross for himself and that he was not Miss Shinn's agent, and that he then mortgaged the property to defendant's testator. So, then, casting aside all question about Ross's title, and about the filing or recording of the Burnham and Updyke mortgage, we are confronted with the simple question whether Green bought the property as Miss Shinn's agent, or whether he bought it for himself. On this question the evidence when properly analyzed points to the one conclusion that he bought it for Miss Shinn. There is not a particle of evidence to the contrary. The proof was that witness Judge Henry conducted the sale as agent for Ross and that he sold to Green; whether he regarded Green as agent for Miss Shinn or as purchasing for himself can make no difference, though it is plain to be seen that he thought Green was acting as agent. The question, though, is, who was Green in fact acting for?

—not what Henry thought about it.  Miss Shinn testified that he was acting for her and that she paid the purchase price of the property by her check.  Henry cashed her check and with the money took up Ross's note to Gage and received from Gage the two Burnham and Updyke notes to Ross held by him as collateral.  He delivered them to Green who thereupon indorsed them over to Miss Shinn without recourse.  Green himself is not produced and from no source is it shown that he ever had any title.  He was in possession of the property as a lessee of Miss Shinn, but that, of course, did not give him a title.  He turned back the possession to Miss Shinn by giving her the key to the building in which the property was kept and the paper published. She then rented the building of defendant Musser at $8 per month and paid him the rent up to her sale to this plaintiff.  This clear act of recognition of Miss Shinn's claim can not be reconciled with any prior right of Musser.  He testified that he regarded the building as worth $15 and that he recognized that she had an interest in the property as well as himself and that she should therefore pay some rent for the building in which the property was situated.  But this is wholly inconsistent with the manner of his act of renting to her.  She wrote him on January 4, 1901, in which she stated that she was in possession and charge of the plant and had the key to his building; that she could not afford to pay him more than eight dollars a month rent; that she had another building offered her for five dollars but would take his rather than move the "plant." She added: "I enclose check for $8 for this month's rent.  If you can not accept that as this month's rent in full, I will have to move the plant to a cheaper room. If you accept this, please sign this receipt and return to me."  Musser then sent her a receipt with the following letter without any suggestion that he claimed possession or interest in the property: "Yours at hand.  I will accept eight dollars per month until plant starts up.  Then I want ten dollars per month.  Green rented from 15th of each month.  Did you want to

begin the 15th or not?'' Receipts for each successive month's rent then followed for six months up to Miss Shinn's sale to plaintiff, without any suggestion of claim of joint possession or ownership or interest. It is altogether beyond reason to suppose that he occupied such status. The *fact is* that *he himself* fixed his status just the contrary.

It is true that when Smith refused possession of the property after Miss Shinn's purchase, Green brought an action of replevin therefor which went off by default. But that was because he was lessee and was to operate the plant and Miss Shinn paid all expenses.

It does not appear in the record that there was ever any foreclosure of the chattel mortgages. But that would make no difference, since a mortgagee in an overdue mortgage may maintain replevin.

We are satisfied that the uncontradicted evidence shows title in Miss Shinn and that she was in possession thereunder at time of sale to plaintiff. And we are further satisfied that there is no evidence upon which to base a claim of title in Green. And in stating this we are not unmindful that it is a part of defendant's claim that Miss Shinn permitted Green to deal with the property as owner, thereby leading defendant to believe he was, and that she was therefore, in justice, now estopped to say he was not. There are two answers to this contention. It was neither pleaded, nor proved; estoppel is a defense which must be set up by answer.

The proof offered by way of a single statement in the newspaper was not sufficient. The record disclosing affirmatively that Miss Shinn had the prior claim to the property and that Green had none, the judgment was the only one that would be permitted to stand, and it is consequently affirmed. All concur.